**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| *In re LastPass Data Security Incident Litigation* | Case Number: 1:22-cv-12047-PBS |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL PLAINTIFFS TO SUPPLEMENT CERTAIN RESPONSES TO DEFENDANT'S SECOND SET OF REQUESTS FOR PRODUCTION OR INSPECTION OF DOCUMENTS

The fifteen Requests[1] identified by Defendant in the Motion to Compel ("Motion") collectively seek full access to records of Plaintiffs' online activities, the contents of their mobile phones and computers, their medical records, personal diaries, and other extremely sensitive information, all of which is simply irrelevant to this data breach case, not proportional to needs of this case, and overly burdensome because this case turns on whether Defendant's failure to implement adequate security standards harmed Plaintiffs and the putative Class. Defendant seeks unprecedented access into Plaintiffs' private lives, in violation of applicable privileges and confidentiality, despite having comprehensively failed to fulfill its meet and confer obligations under the Federal Rules of Civil Procedure and the Local Rules with respect to most of the disputed Requests. For these reasons and other reasons discussed below, the Motion should be denied.

Plaintiffs have complied with their discovery obligations in this case. In response to the fifty-seven Requests for Production and one Request for Inspection cumulatively issued by Defendant, Plaintiffs manually reviewed almost twenty thousand documents and collectively produced more than two thousand responsive, non-privileged documents—many of which are responsive to the Requests at issue here. Defendant has also deposed all fourteen of the Plaintiffs in this case,[2] and Plaintiffs have supplemented their productions to the extent that LastPass

---

[1]    Although Defendant states multiple times that the Motion concerns ten disputed Requests—nine document Requests and one inspection Request, *see* Mot. at 2, 5, the Motion covers a total of fourteen Requests for Production and one Request for Inspection.

[2]    Plaintiffs Shi and Eagelston were dismissed without prejudice during the discovery process.

identified documents that were potentially relevant from Plaintiffs' deposition testimony. Important to the Court's analysis, Plaintiffs have never refused to supplement their productions on reasonable request from LastPass.

Defendant, on the other hand, has not complied with its discovery obligations under the Federal and Local Rules. Plaintiffs twice requested to meet and confer with Defendant regarding nine of the fifteen disputed Requests, first in their responses and objections to the Requests and then in a letter to Defendant. More than three weeks after Plaintiffs' correspondence, on the final day of fact discovery, Defendant filed this Motion without scheduling a specific conference to discuss or respond to the substance of Plaintiffs' objections. Nor did Defendant propose any compromises or clarify what information they needed and why although Plaintiffs clearly sought compromise and clarification. The sum of Defendant's efforts is a single letter and a single question put to Plaintiffs on a general discovery call regarding whether they intended to stand on their objections. Defendant's failure to meet and confer in good faith regarding these Requests prior to filing this Motion is a breach of its obligations under Federal Rule of Civil Procedure 37 and Local Rule 37.1 and, on this basis, the Court should dismiss the Motion in its entirety.

Defendant's lack of interest in meeting and conferring with Plaintiff regarding these harassing, invasive, and far-reaching Requests shows that they intend to intimidate and humiliate Plaintiffs with the threat of even more highly intrusive discovery into every aspect of their private lives. In light of Plaintiffs' cooperation and their fulsome productions to date, and Defendant's failure to work with Plaintiffs, as the Rules require, to narrow the scope of their unreasonable and invasive Requests, Plaintiffs respectfully request that this Court deny Defendant's Motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On November 15, 2024, Defendant served its First Set of Requests for Production of Documents to Plaintiffs (the "First Requests for Production"), comprising thirty-one Requests. Plaintiffs timely served their responses and objections, on January 15, 2025, as well as an initial production of documents. Subsequently, the Parties met and conferred and exchanged correspondence about the First Requests for Production and ultimately arrived at agreement on

many issues, including the search terms and time period Plaintiffs used to identify responsive documents and information.

Defendant served its Second Set of Requests for Production or Inspection of Documents to Plaintiffs (the "Second Requests for Production"), on March 7, 2025, which are the subject of the instant Motion, comprised of twenty-six Requests for Production and one Request for Inspection. Plaintiffs timely served their Omnibus Responses and Objections to Defendant's Second Set of Requests for Production or Inspection of Documents (the "Omnibus Responses"), on April 7, 2025. On April 17, 2025, Defendant sent Plaintiffs' counsel a letter (the "Deficiency Letter") outlining purported deficiencies in Plaintiffs' Omnibus Responses. Plaintiffs responded by letter dated May 5, 2025 (the "Response Letter"), detailing the bases for their Omnibus Responses and offering to meet and confer on nine of the disputed Requests. Defendant did not respond to Plaintiffs' Response Letter or otherwise attempt to meet and confer to reach a compromise. The sole verbal communication on the matter between the Parties occurred on a recurring discovery call the same day Plaintiffs issued their Response Letter. On that call, Defendant's counsel asked if Plaintiffs intended to stand on their objections; when Plaintiffs' counsel affirmed and directed counsel to the forthcoming Response Letter, Defendant's counsel stated their intent to file this Motion. Over three weeks later, on the final day of fact discovery, LastPass filed this Motion seeking the intervention of the Court having never attempted to negotiate with Plaintiffs in good faith to narrow the issues.

Since April of 2025, Plaintiffs have engaged in rolling productions of documents relating to each of the Plaintiffs. Cumulatively, Plaintiffs manually reviewed 19,126 documents identified by searching Plaintiffs' email accounts using mutually agreed to search terms and collectively produced over 2,000 responsive, non-privileged documents to Defendant. Defendant has also deposed all fourteen of the Plaintiffs remaining in this case.

The fifteen purportedly deficient Requests at issue in this Motion collectively seek full access to the entirety of the Plaintiffs' online activities, the contents of their mobile phones and computers, their medical records, personal diaries, and other extremely sensitive information. Plaintiffs have objected to these invasive and burdensome requests on various appropriate grounds

set forth in the Omnibus Responses.

## **APPLICABLE LEGAL STANDARD**

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Although a party is broadly entitled to relevant documents, such entitlement "does not open the floodgates for cascading discovery of every type and kind." *Bonner v. Triple S Mgmt. Corp.*, 68 F.4th 677, 684 (1st Cir. 2023) (quotation omitted). Federal Rule of Civil Procedure 26(b)(1) serves a gate-keeping function whereby a party is entitled to discovery of non-privileged documents that are both "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, . . . the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The proponent of a motion to compel must identify the specific documents it seeks and "bears the initial burden of showing that the discovery requested is relevant." *Torres v. Johnson & Johnson*, 2018 U.S. Dist. LEXIS 144043, at *2 (D. Mass. Aug. 24, 2018) (quotation omitted); *see also In re Telexfree Sec. Litig.*, 2024 U.S. Dist. LEXIS 203897, at *30-31 (D. Mass. Nov. 8, 2024) (denying a motion to compel in part because the movant failed to "explain[] with any specificity what documents are missing, or why any such missing information is relevant to [its] claims"); *A.J. Amer Agency, Inc. v. Astonish Results, LLC*, 2013 U.S. Dist. LEXIS 188707, at *1 (D.R.I. Feb. 25, 2013) (denying  motion to compel and  noting that movant failed to identify specific documents and digital files sought).

Rule 37 also provides an important discovery gate-keeping role: to narrow the scope of disputes to the fullest extent possible. Specifically, Rule 37 requires a party seeking to compel discovery to certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Similarly, Local Rule 37.1 obligates the Parties to confer "[b]efore filing any

discovery motion, including any motion for sanctions or for a protective order … in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference." Local Rules of the U.S. Dist. Court for the Dist. of Mass. ("Local Rules") 37.1.

**ARGUMENT**

**1.    The Motion Should Be Dismissed Due to Defendant's Failure to Comply with the Federal and Local Rules**

The Motion suffers from a fatal defect: Defendant certified that they met and conferred with Plaintiffs' counsel in accordance with Local Rules 7.2(b) and 37(1)(b), Mot. at 20, but Defendant failed to satisfy its obligations under the Local or Federal Rules to meet and confer regarding the disputed Requests. Defendant did not attempt to limit the nature of the dispute "to the greatest possible extent," as the Local Rules require. Indeed, Defendant filed this Motion without scheduling a specific conference to meet and confer regarding the substance of Plaintiffs' objections or propose any compromises or clarifications of their Requests in response to Plaintiffs. LastPass' behavior fails to satisfy this standard, intended to promote efficiency of litigation and conserve the Court's resources.

Local Rules 37.1 and 7.1(a)(2) and Rule 37(a)(1) require that in connection with a motion to compel, the moving party must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it" without the court's intervention. *See Aponte-Navedo v. Nalco Chem. Co.*, 268 F.R.D. 31, 40 (D.P.R. 2010).[3] Additionally, Local Rule 37.1(b) and (b)(2) require any discovery-related motion to "state with particularity," *inter alia*, "the time, date, location and duration of [any discovery conference held]; who was present for each party; the matters on which the parties reached agreement; and the issues remaining to be decided by the court." "The meet and confer requirement in Rule 37(a)(1) is not an empty formality and cannot be satisfied merely by including copies of

---

[3]    Local Rule 37.1(b) requires the movant to "include a certificate in the margin of the last page that the provisions of this rule have been complied with." Likewise, Local Rule 7.1(a)(2) provides that "No motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."

correspondence that discuss the discovery at issue." *A.J. Amer Agency, Inc.*, 2013 U.S. Dist. LEXIS 188707, at *6. These Rules exist "to avoid premature motions," i.e., motions to compel filed before counsel reach an impasse on the disputed discovery, and "to enable the parties to attempt to narrow, if not resolve, their dispute." *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996).

In light of these Rules, "two components are necessary to constitute a facially valid motion to compel." *Shuffle Master v. Progressive Games*, 170 F.R.D. 166, 170 (D. Nev. 1996). First, "the actual certification document," which "must accurately and specifically convey to the court who, where, how, and when the respective parties attempted to personally resolve the discovery dispute." *Id.* The second component is "performance, which also has two elements. The moving party performs, according to the federal rule, by certifying that he or she has (1) in good faith (2) conferred or attempted to confer. Each of these two subcomponents must be manifested by the facts of a particular case in order for a certification to have efficacy and for the discovery motion to be considered." *Id*.

Defendant's Motion is manifestly deficient because it did not fully comply with either Rule 37 or the Local Rules governing the Motion. First, the certification lacks information expressly required by Local Rule 37.1(b)(2). *See Serafino*, 168 F.R.D. at 101. Specifically, neither the certification[4] nor the Motion provide the "who, where, how, and when" Defendant attempted to resolve the purported deficiencies with Plaintiffs. These facts are necessary "to enable the court to pass a preliminary judgment on the adequacy and sincerity of the good faith conferment between the parties." *Shuffle Master, Inc.,* 170 F.R.D. at 171; *cf. AIU Ins. Co. v. TIG Ins. Co.*, 2008 U.S. Dist. LEXIS 66370, at *12 (S.D.N.Y. Aug. 28, 2008) (holding that a declaration submitted in

---

[4]     In full, Defendant's certification states: "Undersigned counsel hereby certifies that they have conferred with counsel for Plaintiffs in a good faith effort to resolve or narrow the issues raised by this Motion and Plaintiffs oppose the relief sought by this Motion." Mot. at 20. In contrast, the Declarations attached to Plaintiffs' two motions to compel detail the course of negotiations between the Parties on the disputed Requests, including dates of meet and confer conferences and what was discussed—the requisite who, where, how, and when. *See* Dkt. 213, Dkt. 219.

connection with a motion to compel satisfied "the level of factual specificity required by Rule 37" when the declarant "certifies that he 'conferred in good faith with counsel . . . by means of numerous phone conferences and discovery correspondences . . . in an effort to secure disclosure of the documents sought . . . ,'" "details the initial discovery conference" between counsel, "the subsequent correspondence," and "notes that [counsel] could not resolve the dispute concerning the . . . documents" before filing the motion to compel).

The "who, where, how, and when" was not provided via certification or in the Motion because Defendant failed to discharge its obligation to meet and confer in good faith with Plaintiffs regarding the disputed Requests. As detailed above, following Plaintiffs' service of the Omnibus Responses, the Parties exchanged two letters concerning the disputed Requests. Defendant's Deficiency Letter acknowledges Plaintiffs' requests to meet and confer with respect to Requests 36-39 and 41-45, Deficiency Letter at 2, but Defendant did not actually attempt to schedule a specific conference to discuss or respond to the substance of Plaintiffs' objections. Plaintiffs' Response Letter, the last correspondence on this matter, was sent on May 5, 2025, and reaffirmed their willingness to meet and confer on the same nine Requests. *See* Response Letter at 1-2. Defendant did not respond to Plaintiffs' offer. The sum of Defendant's efforts is a single letter and a single question put to Plaintiffs on a general discovery call regarding whether they intended to stand on their objections. When Plaintiffs' counsel answered in the affirmative, Defendant's counsel indicated that they intended to move to compel discovery and made no further attempt to discuss the issue on that call or at a later date. *See* Faubus Decl.

Defendant's parsimonious efforts were insufficient to meet its obligations to meet and confer in good faith. Letters and emails do not meet the "conferral" requirement. *See Antonis v. Elec. for Imaging, Inc.*, 2008 U.S. Dist. LEXIS 6887, at *1 (D.N.H. Jan. 16, 2008) ("simply reiterating demands for production in a series of emails probably does not meet the requirement that the parties confer in good faith about discovery issues before invoking judicial remedies."); *Reed v. Beverly Hills Porsche*, Civil Action No. 6:17-cv-59, 2017 U.S. Dist. LEXIS 227319, at *2 (W.D. Va. Nov. 22, 2017) ("[S]imply exchanging emails or letters, demanding compliance with

discovery requests, or merely stating that the parties have met and conferred do not satisfy Rule 37(a)(1)."); *Shuffle Master*, 170 F.R.D. at 172 ("The mere sending of a letter demanding supplemental responses to interrogatories was insufficient."). Nor do phone calls in which the parties fail to fully address the disputed issues. *See Neale v. Coloplast Corp.*, 2020 U.S. Dist. LEXIS 161415, at *2 (E.D. Tenn. Sep. 3, 2020) (denying motion to compel when the parties had a single "five-minute telephone call" in which the movant "specifically addressed only a single interrogatory" because the "moving party must 'meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention.'"); *In re Johnson*, 408 B.R. 115 (Bkrtcy. S.D. Ohio) (holding a party had failed to meet Rule 37's good faith requirement with only a single e-mail, a single letter, and an unspecified, but small, number of phone calls); *Shuffle Master,* 170 F.R.D. at 173 (noting that sending demand letters via facsimile and placing one phone call was insufficient to constitute actual "conferment" under Rule 37). Here, Defendant did not attempt to discuss the disputed Requests with Plaintiffs and therefore did not satisfy the conferral requirements.

Defendant's "failure to comply with the meet and confer requirements constitutes sufficient reason to deny the motion to compel." *Aponte-Navedo*, 268 F.R.D. at 41; *see also A.J. Amer Agency, Inc.*, 2013 U.S. Dist. LEXIS 188707, at *6 ("The movant must do what Rule 37(a)(1) says: attempt to engage in substantive communication and resolve the discovery dispute in good faith."); *Velázquez-Pérez v. Developers Diversified Realty Corp.*, 272 F.R.D. 310, 312 (D.P.R. 2011) (denying a motion to compel when "a careful examination of the emails and letters sent by plaintiff's counsel to the defendant's attorney does not reveal that a good faith effort was made in order to reach an agreement over the discovery dispute" and "defendant was willing to meet with plaintiff in order to solve the discovery dispute but that plaintiff never acceded to that fairly simple request").

Defendant's argument that Plaintiffs' responses and objections are not in compliance with Rule 34, Mot. at 3-4, misses the forest for the trees. Had Defendant engaged in the required meet and confer process with respect to Requests 36-39 and 41-45, Plaintiffs would have been able to

more fully explain the bases of their objections and, for example, inform Defendants that Plaintiffs are not aware of documents responsive to Requests 36 and 37. *See infra* Sections 3 and 4. But Plaintiffs' requests to meet and confer were ignored. With respect to the remaining six disputed Requests, 32-35, 46, and Request for Inspection No. 1, Plaintiffs provided detailed objections, including citations to supporting caselaw. *See, e.g.,* Omnibus Responses at 2 (Response to Request No. 32), 25 (Response to Request for Inspection No. 1). Thus, Plaintiffs' responses fully comply with the specificity requirements of Federal Rule of Civil Procedure 34.

Defendant's lack of interest in meeting and conferring with Plaintiff regarding these harassing, invasive, and far-reaching Requests show that they are intended to intimidate and humiliate Plaintiffs with the threat of even more highly intrusive discovery into every aspect of their private lives. As detailed below, the disputed Requests are essentially unlimited in nature and call for unprecedented access into Plaintiffs' online activities, medical records, phones and computers, and other highly sensitive areas of inquiry, in violation of applicable privileges and confidentiality and without regard to the relevance of the information sought.

2.    **Defendant's Requests for Social Media Data Files and Web Activity (Requests 32-35 and 46) Are Overbroad, Irrelevant, and Not Proportional to the Needs of the Case**

In this category of Requests, Defendant demands disclosure of every aspect of Plaintiffs' online activity without regard to relevance or proportionality. The Court should decline to provide Defendant unfettered access to irrelevant discovery that is not remotely proportional to the needs of this Action.

Requests 32-35 seek "[a] copy of *the Entire Data File* for each and every [Facebook, Twitter (X), Instagram, and TikTok] account held by [each Plaintiff]," and Request 46 seeks "[a]ll Documents relating to [each Plaintiffs'] *activity on any web-based account*, including without limitation itemized records or logs of electronic email, web mail, web calendars, security alerts, browsing history, and search history." Mot. at 5-6 (emphasis added).

Plaintiffs' objections to Requests 32-35 included that they were overbroad to the extent that they sought information irrelevant to Plaintiffs' claims and provided supporting caselaw. *See*

Omnibus Responses at 2 (Response to Request No. 32). Plaintiffs' objections to Request 46 stated, *inter alia*, that it sought irrelevant documents and information, was vague or ambiguous as to the meaning of "activity on any web-based account," and would require an unreasonable investigation by Plaintiffs. *See id*. at 15 (Response to Request No. 46). In the Deficiency Letter, Defendant took issue with Plaintiffs' objections but did not propose a compromise or attempt to limit the Requests to relevant information. Deficiency Letter at 1-2.

Defendant now offers two rationales for these impermissibly overbroad and invasive Requests. First, it claims that "LastPass is entitled to discover whether Plaintiffs publicly posted (or failed to restrict) information about themselves that could be used by unknown actors to target them for fraud," and "the extent to which Plaintiffs took steps to secure certain information about themselves or their activities online." Mot. at 7-8. LastPass also argues that, because Plaintiffs alleged that they experienced distress and anxiety resulting from a data breach involving sensitive financial and personal information, it is entitled to "discover facts and information about [Plaintiffs'] personal lives through social media, as a potential source of relevant information." Mot. at 8. Neither rationale withstands scrutiny.

First, to the extent Defendant is concerned with "publicly posted" information, it is equally capable of obtaining such information by reviewing Plaintiffs' social media accounts. When putatively relevant information "is publicly available . . .the parties should consider what approach is the least costly and burdensome" that provides the requesting party "with the evidence it needs to present proof at trial." *A.J. Amer Agency, Inc.*, 2013 U.S. Dist. LEXIS 188707, at *7-8. As for non-public social media activity, "[t]here is a distinction between discovery of social media postings that are available to the general public and those that the user has restricted from view." *T.C. ex rel. S.C. v. Metro. Gov't of Nashville & Davidson Cnty.*, U.S. Dist. LEXIS 113517, at *46 (M.D. Tenn. July 9, 2018). "To obtain discovery of non-public social media, a party must show that the information sought is reasonably calculated to be relevant to the claims and defenses in the litigation." *Id*.

Defendant's Requests would require Plaintiffs to obtain and divulge reams of irrelevant

information, including highly sensitive non-public personal information, and Defendant has not shown that the information sought is relevant and proportional to the claims and defenses at issue in this case. *See T.C. ex rel. S.C.*, 2018 U.S. Dist. LEXIS 113517, at *47-48 (a party seeking to discover social media activity "must still make a showing of relevance and proportionality to the claims of the litigation."). The "Entire Data File" sought in Requests 32-35 includes private messages, search histories, photos and videos, marketplace activity, and other highly sensitive, personal, and non-relevant information. Second Requests for Production at 9-12. Likewise, Request 46 seeks disclosure of all documents relating to "activity on *any web-based account*," which on its face calls for disclosure of, for example, all activity on dating websites or apps, medical websites or apps (including activity reflecting Personal Health Information protected by HIPAA), tax preparation websites, all business- or work-related activity—every online activity is covered by this Request, including "browsing history" and "search history." Second Requests for Production at 14.  Request 46 also calls for "records or logs of" email even though Plaintiffs have already searched their email accounts using agreed upon search terms and produced all relevant non-privileged documents. *Id.*

Defendant refused Plaintiffs' attempts to narrow these Requests to, e.g., information bearing on Plaintiffs' claims.[5] *See* Omnibus Responses at 2-4 (Response to Request No. 32). "All encompassing' production requests," such as those at issue here—seeking *all* content and data— fail to meet Rule 34(b)'s reasonable particularity requirement. *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 572 (C.D. Cal. 2012) (holding that a request narrower than those at issue here—"any pictures of Plaintiff taken during the relevant time period and posted on Plaintiff's profile or tagged or otherwise linked to her profile"—was "impermissibly overbroad"); *see also Rodriguez-Ruiz v. Microsoft Operations P.R., LLC*, No. 18-1806 (PG), 2020 U.S. Dist. LEXIS 39681, *12 (D.P.R. Mar. 5, 2020) ("[T]he court will not allow Defendant to have unrestricted

---

[5]     All Plaintiffs were asked to identify and provide relevant social media posts for production, and at least one Plaintiff has produced a social media post that directly referenced LastPass. *See* Faubus Decl., Exhibit B. No other Plaintiff identified relevant social media posts.

access to Plaintiff's social media account(s)"); *Tompkins v. Detroit Metro. Airport*, 278 F.R.D. 387, 389 (E.D. Mich. 2012) (denying defendant's request for access to plaintiff's Facebook account); *Holter v. Wells Fargo & Co.*, 281 F.R.D. 340, 344 (D. Minn. 2011) ("[T]he Court will not allow defendant to review social media content to determine what it deems is relevant."); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 591 (N.D. Tex. 2016) ("Court[s] have held that ordering a party to permit access to or produce complete copies of his social networking site accounts would permit his opponent to cast too wide a net and sanction an inquiry into scores of quasi-personal information that would be irrelevant and non-discoverable").

Second, Plaintiffs' allegations of anxiety and distress do not give Defendant carte blanche to sift through every aspect of their digital lives. "Courts have reached varying conclusions regarding the relevance of social networking postings in cases involving claims for emotional distress damages." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115 (E.D.N.Y. 2013). The majority position appears to be that it has limited or no probative value. *See id*. ("The fact that an individual may express some degree of joy, happiness, or sociability on certain occasions sheds little light on the issue of whether he or she is actually suffering emotional distress."); *Rozell v. Ross-Holst*, 2006 U.S. Dist. LEXIS 2277, at *11 (S.D.N.Y. Jan. 20, 2006) ("To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may have reduced to writing or, indeed, the deposition of everyone she might have talked to."). Given that the information requested is, at best, of questionable relevance, Defendant's Requests are disproportionate to the issues in this case.

In support of these particular Requests, Defendant relies on two cases, neither of which supports its position. The Court in *Mailhoit v. Home Depot U.S.A., Inc.*, denied the motion to compel in part for being impermissibly overbroad and vague, granting the motion only for the portion of the request for social media information that was tailored to the facts of the case. 285 F.R.D. at 572 (granting a motion to compel in an employment discrimination lawsuit only as to communications between the plaintiff and "any current or former" employees of defendant "or

which in any way refer . . . to her employment . . . or this lawsuit"). Here, in contrast, Defendant's "'[a]ll encompassing' production requests" that have no relevance to the substance of Plaintiffs' claims in this Action should be denied. *Id.* Similarly, while the court in *Anderson v. City of Fort Pierce*, granted defendant's motion to compel plaintiff to produce "photographs or videos" posted to her social media, 2015 U.S. Dist. LEXIS 180408, at *4 (S.D. Fla. Feb. 12, 2015), Defendant's request here is considerably broader. Moreover, *Fort Pierce* also addressed an employment discrimination claim wherein plaintiff's claims focused on sexual harassment and a hostile work environment. *Id.* at *1. As a result, plaintiff's emotional state and health were directly relevant to plaintiff's asserted claims and her "mental health and quality of life." *Id.* at *4. That is not the case before the Court here. *See, e.g., Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2013 U.S. Dist. LEXIS 119496, at *8 (E.D. La. Aug. 22, 2013) ("Simply placing their mental and physical conditions at issue is not sufficient to allow PPI to rummage through Johnson's or Croke's social media sites. Almost every plaintiff places his or her mental or physical condition at issue, and this Court is reticent to create a bright-line rule that such conditions allow defendants unfettered access to a plaintiff's social networking sites that he or she has limited from public view."). This is a data breach case where Plaintiffs' allegations of emotional distress as a result of the data breach are not central to the claims and causes of action before the Court.

**3.    <u>Plaintiffs Have Stated That They Do Not Have Documents Responsive to Request 36</u>**

Request 36 seeks the disclosure of "security alerts" and a "list of accounts with compromised passwords" contained in Plaintiffs' electronic devices. Although Defendant claims that "Plaintiffs did not state whether any responsive documents are being withheld" or "that they do not understand what documents are sought by this Request," Mot. at 9, Plaintiffs clearly stated in their Response Letter that they "are not aware of any documents in their possession they are withholding in response to this Request" and requested that Defendant clarify which documents are sought by this Request and the Plaintiffs to which this Request is applicable. *Id.*

Putting aside Defendant's failure to respond to Plaintiffs' request to meet and confer regarding this Request, which alone is cause for denial, *see supra*, Section 1, this Request should

be denied because it requires Plaintiffs to create new documents comprised of "security alerts" and "compromised passwords" logged in their device settings. "[I]t is well-settled that a responding party's obligations under Rule 34 do not extend to non-existent materials." *Greenberg v. Paths Program Holding, LLC (MA)*, 2023 U.S. Dist. LEXIS 98980, at *12 (D. Mass. June 7, 2023) (quotations omitted). "A party is not required 'to prepare, or cause to be prepared,' new documents solely for their production." *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C. 2000) (quoting *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 511 (W.D. Pa. 1983)).

Defendant's "detailed instructions," Mot. at 10, would require Plaintiffs to manually compile a new document that does not presently exist—a list of security alerts logged in their mobile devices. For example, following Defendant's instructions for an iOS device merely results in the new generation of a list that cannot be exported. To comply, Plaintiffs would be required to transcribe their results into a new document, which is expressly not encompassed within the Rules. This Request thus imposes obligations greater than those set forth in Rule 34 of the Federal Rule of Civil Procedure and should be denied. *See Khyber Techs. Corp. v. Casio, Inc.*, 2003 U.S. Dist. LEXIS 12450, at *29 (D. Mass. Mar. 31, 2003) ("these Rules do not provide a basis for Casio's claim that it is entitled to a transcript of the interviews that took place or will take place . . . . *Rule 34 only allows parties to request and inspect documents that already exist and does not require parties to create documents*.") (emphasis added) (citing *Alexander*, 194 F.R.D. at 310 (denying a motion to compel the production of a list where there was no evidence that such a list existed).

**4.    Plaintiffs Are Not Aware of Documents Responsive to Request 37**

Request 37 seeks documents "relating to any malware found on a Device" a Plaintiff used to access their LastPass account or "any website or account" the login credentials for which were stored in a Plaintiff's Vault. As with Request 36, Plaintiffs requested to meet and confer on this Request[6]— ignored by Defendant—and clearly stated that they are not aware of any documents in

---

[6]    Among other issues, Plaintiffs wished to clarify the meaning of the undefined term "malware." Omnibus Responses at 7.

their possession they are withholding in response to this Request. Omnibus Responses at 8-9; Response Letter at 1.

Plaintiffs simply are not aware of any documents responsive to this Request. Defendant would know this had it upheld its obligations to meet and confer with Plaintiffs prior to filing this Motion. "A court cannot compel a party to produce documents that do not exist . . . ." *Rain v. Conn. Gen. Corp.*, 2023 U.S. Dist. LEXIS 93217, at *8 (D. Mass. Jan. 31, 2023) (quotations omitted). Defendant does not argue that such documents do in fact exist and are being withheld; rather, it engages in unfounded speculation, arguing that some Plaintiffs' use of the same "third-party software" that was exploited to accomplish the LastPass data breach and the fact that one Plaintiff sent an email between two of his accounts containing his cryptocurrency keys—which was produced to Defendant—"raises questions" about whether Plaintiffs devices or accounts were in fact exploited. Mot. at 11-12. In the absence of "information contradicting or calling into question" Plaintiffs' representations that they do not have any responsive documents in their possession, custody, or control, Defendant's Request is moot. *See id.*

## 5.    <u>Defendant's Request to Forensically Image Plaintiffs' Devices Is an Impermissible Fishing Expedition</u>

Related to Request 37, in its Request for Inspection, Defendant demands to forensically image and inspect "all [d]evices" used by Plaintiffs to access their LastPass accounts. Second Requests for Production at 18. Plaintiffs objected to this Request on numerous grounds, including that it sought irrelevant information, was not limited as to time or scope, and that less intrusive approaches to obtaining the information sought were available, and provided caselaw from this Court supporting their objections. Omnibus Responses at 26; Response Letter at 3-4. For all of these reasons, Defendant's forensic imaging request should be denied in full.

"[G]iven the cell phone owner's compelling privacy interest in the contents of his or her cell phone," relevance and proportionality are critical considerations when "determining whether to grant a motion to compel the forensic imaging of a cell phone or other electronic device." *Hardy v. UPS Ground Freight, Inc.*, 2019 U.S. Dist. LEXIS 121277, at *6 (D. Mass. July 22, 2019). "The

utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns. Issues that may be relevant to the inquiry include whether the party withheld information, whether the responding party is unable or unwilling to search for the requested information and the extent to which the requesting party has complied with discovery requests." *Klayman v. City Pages*, 2014 U.S. Dist. LEXIS 150253 (M.D. Fla. Oct. 22, 2014).

*Hardy* is instructive. There, defendant moved to compel plaintiff to deliver his cell phone for forensic imaging based on "[s]peculation" that [p]laintiff might have exchanged other [undisclosed] text messages" and deleted responsive text messages. *Id*. at 4-5. Judge Robertson denied Defendant's motion based on several considerations. Although the information sought was arguably relevant, "[t]he forensic examination that [defendant] seeks is not limited in any way, whether by search term, date, or identity of the sender or receiver." *Id.* at 7 (quotation omitted). Additionally, the defendant failed to make a "specific showing" of the "relevance of the contents of the forensic image it seeks." *Id.* at 9. Finally, the defendant failed to establish that "no less invasive means of obtaining the evidence" was available or "propose[] a protocol that would limit its access to private or privileged contents of [p]laintiff's cell phone." *Id*.

Defendant's Request for Inspection fails for the same reasons here. The forensic imaging request is completely without limit, and LastPass has not proposed a protocol that would restrict its access to Plaintiffs' devices. *See* Second Requests for Production at 18; Deficiency Letter (describing Plaintiffs' objections as "baseless" and reiterating Request). Nor has LastPass addressed Plaintiffs' objection that the information sought could be obtained through less intrusive methods.[7]

Defendant has not even specifically identified what it hopes to find on Plaintiffs' devices. The stated purpose of this Request is to "inspect for malware or other signs of compromise" and

---

[7]    To the extent that Defendant's forensic imaging of Plaintiffs' devices is to identify compromised accounts, Defendants have at least two other sources for such information: Plaintiffs have produced data breach notifications and other documents relating to cybersecurity issues and Defendant has introduced as deposition exhibits publicly available information concerning data breaches involving Plaintiffs' email addresses.

"assess Plaintiffs' potential risks of unauthorized access to their information." Mot. at 13-14. These speculative aims are unreasonably broad, especially in light of Plaintiffs' assertion that they are not aware of any documents responsive to Request No. 37. *See In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 329 F.R.D. 656, 670 (D. Or. 2019) ("The relevance asserted by Premera, however, is not closely related to Plaintiffs' claims or damages, or even Premera's defenses. As discussed above, Premera has not shown any relevance to Plaintiffs' *damages* theories. Premera's relevance argument accepted by the Court is quite narrow—that Plaintiffs still argue that their data has been misused. This may meet the low threshold for relevance of some information that potentially may be found on Plaintiffs' Devices, but it does not show a sufficiently close relationship between Plaintiffs' claims and the Devices to support the Court ordering the burdensome and intrusive imaging of Plaintiffs' Devices.").

Ultimately, Defendant has not made the requisite "specific showing" of the relevance of the information it seeks because it has not articulated what documents or information it is seeking. *See Hardy*, 2019 U.S. Dist. LEXIS 121277, at *9. In the absence of "credible evidence that [Plaintiffs] are unwilling to produce" the information sought, "whether now or in the future, or that [Plaintiffs] have withheld relevant information," Defendant's request is improper. *See Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 146 (D. Mass. 2005) (denying motion to compel forensic imaging of party's computer where there was no showing that the sought-after evidence existed or had been withheld). Thus, "[d]efendant has failed to establish that the circumstances warrant a compelled wholesale imaging of the entire contents of [p]laintiff's [devices]." *Id.*; *see Ramos v. Hopele of Fort Lauderdale, Ltd. Liab. Co.*, 2018 U.S. Dist. LEXIS 44327, at *10 (S.D. Fla. Mar. 19, 2018) ("In sum, the Court finds that Hopele's request for a forensic examination of [p]laintiff's cell phone is not tailored to obtain information that is relevant to any claim or defense in this case. Furthermore, the proposed forensic examination is not proportional to the needs of the case or to [p]laintiff's privacy concerns."); *John Crane Grp. Corp. v. Energy Devices of Tex., Inc.*, No. 6:14-CV-178, 2015 U.S. Dist. LEXIS 193074, at *9 (E.D. Tex. Feb. 2, 2015) ("It is not enough for [p]laintiff to argue its belief that there may be relevant

documents on the hard drives that have not been produced. Mere skepticism that the opposing party produced all relevant and non-privileged documents from the hard drives, standing alone, is not sufficient to warrant the drastic discovery measure of producing hard drives for forensic examination.") (*citing McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001)).

Defendant falsely avers that "Plaintiffs have not produced any documentary evidence" relating to potential account or device compromises such that "LastPass cannot fully assess Plaintiffs' potential risks of unauthorized access to their information." Mot. at 13-14. On the contrary, Plaintiffs have searched for and produced numerous documents and ESI relating to the data security issues cited as justifications for this Request (and Request 37), including emails detailing their involvement in other data breaches. *See* Faubus Decl., Exhibit A. Moreover, Defendant was able to depose each of the Plaintiffs about these issues and Plaintiffs have supplemented their productions to the extent that LastPass has identified documents that were potentially relevant. In light of Plaintiffs' cooperation and their fulsome productions to date, the fact that Defendant has not identified any specific documents that it believes are being withheld and could obtain through forensic imaging underlines the baseless nature of this Request.

**6.    Defendant Seeks Production of Privileged Documents**

Finally, LastPass seeks to compel the production of documents and medical records concerning Plaintiffs' emotional distress and anxiety as a result of the Data Breach, despite acknowledging that these documents are all protected by privilege. Mot. at 15, 18. The existence of a protective order does not waive Plaintiffs' privilege or change the fact the documents LastPass seeks from Plaintiffs are privileged. As with Requests 36-39, Plaintiffs offered to meet and confer with Defendant regarding these Requests, and Defendant failed to respond. For these reasons, this Court should deny Defendant's Motion as to these Requests.

Courts in this District have repeatedly applied the "narrow" approach to waiver of confidentiality, holding that the psychotherapist-patient privilege is not waived unless plaintiff calls the psychotherapist as a witness at trial or otherwise relies on the substance of a privileged

communication, but is not waived where a plaintiff merely asserts a claim for emotional distress. *See Howe v. Town of North Andover*, 784 F. Supp. 2d 24, 34 (D. Mass. 2011); *see also Silvestri v. Smith*, 2016 WL 778358, at *4 (D. Mass. Feb. 26, 2016) (surveying cases and finding that "'the federal court in Massachusetts has been [nearly] uniform in taking the more limited view' of waiver of the psychotherapist-patient privilege"); *Bettencourt v. Arruda*, 2011 U.S. Dist. LEXIS 119209, at *3-4 (D. Mass. Oct. 14, 2011) (finding no waiver under state common law where plaintiff did not call his psychotherapist as a witness or attempt to introduce the substance of privileged communications); *Booker v. City of Bos.*, 1999 U.S. Dist. LEXIS 14402, at *3 (D. Mass. Sept. 10, 1999) (citations omitted) (explaining that "the privilege is not waived unless the plaintiff makes affirmative use of the privileged material in connection with [the] prosecution of the case"); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225, 228 (D. Mass. 1997) (holding "that [p]laintiff must use the privileged communication as evidence herself before she waives the privilege"). As the *Vanderbilt* court explained, the circumstances where privileged communications would be at issue in a case are extremely limited. For example, where a plaintiff "use[s] the substance of her communication, by calling her psychotherapist as a witness … or by testifying to the substance of the communication herself, then she would waive the privilege. These would be situations where [p]laintiff puts the privileged communication itself at issue." *Id.* at 230.

Here, Plaintiffs have not and do not intend to invoke privileged communications or the testimony of a therapist in support of their claims of emotional distress. Moreover, LastPass has not even attempted to limit these document requests to avoid the disclosure of privileged information. Instead, LastPass requests privileged information, including "treatment records," "diagnosis," "treatment," and "any communication You had with another person, including a physician or therapist[.]" Mot. at 15-17 (emphasis added). Consistent with the narrow approach applied by courts in this District, LastPass' Motion to compel the production of these sensitive records should be denied.

Finally, not only are the documents LastPass seeks to compel privileged and confidential, they are not central to Plaintiffs' claims or LastPass' affirmative defenses. Fed. R. Civ. P. 26(b)(1)

("Parties may obtain discovery regarding any *nonprivileged matter that is relevant* to any party's claim or defense and *proportional to the needs of the case*.") (emphasis added). Indeed, with respect to relevance to the claims asserted here, the *Vanderbilt* court viewed claims for emotional distress in the same vein as a plaintiff seeking attorneys' fees. *Vanderbilt*, 174 F.R.D. at 229 ("The act of seeking damages for emotional distress is analogous to seeking attorney's fees."); *cf. Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2013 U.S. Dist. LEXIS 119496, at *8 (E.D. La. Aug. 22, 2013) ("Almost every plaintiff places his or her mental or physical condition at issue, and this Court is reticent to create a bright-line rule that such conditions allow defendants unfettered access to a plaintiff's social networking sites that he or she has limited from public view."). As a result, LastPass' requests here are far too overbroad and ought to be denied in full.

Date: June 13, 2025

Respectfully Submitted,

*s/ James Ulwick*
James A. Ulwick*
Amy Keller*
**DICELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
julwick@dicellolevitt.com
akeller@dicellolevitt.com

Nathaniel L. Orenstein (BBO #664513)
Patrick T. Egan (BBO #637477)
Justin N. Saif (BBO #660679)
**BERMAN TABACCO**
One Liberty Square Boston, MA 02109
Tel: (617) 542-8300
Fax: (617) 542-1194
norenstein@bermantabacco.com
pegan@bermantabacco.com
jsaif@bermantabacco.com

Christina M. Sarraf*
**BERMAN TABACCO**

425 California Street, Suite 2300
San Francisco, CA 94104
Tel: (415) 433-3200
Fax: (415) 433-6382
csarraf@bermantabacco.com


Nicholas A. Migliaccio*
Jason Rathod*
Bryan Faubus*
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com


*Interim Co-Lead Counsel for the Plaintiffs*

Michael R. Reese*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272
mreese@reesellp.com

George V. Granade*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Tel: (310) 393-0070
Fax: (212) 253-4272
ggranade@reesellp.com

Charles D. Moore*
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Tel: (212) 643-0500
Fax: (212) 253-4272
cmoore@reesellp.com

*Interim Co-Lead Counsel for the California Subclass*

Thomas A. Zimmerman, Jr.*
**ZIMMERMAN LAW OFFICES, P.C**.
77 W. Washington St., Ste 1220
Chicago, IL 60602
Tel: (312) 767-6463
Fax: (312) 440-4180x
tom@attorneyzim.com

James J. Pizzirusso*
**HAUSFELD LLP**
888 16th Street, N.W. Suite 300
Washington, D.C. 20006
Tel.: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street Fourteenth Floor
New York, NY 10004
Tel.: (646) 357-1100
Fax: (212) 202-4322
snathan@hausfeld.com

*Chairs of the Plaintiffs' Executive Committee*

Sabita J. Soneji*
Cort T. Carlson*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
Fax: (202) 973-0950
ssoneji@tzlegal.com
ccarlson@tzlegal.com

Robert C. Schubert*
Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220
Fax: (415) 788-0161
rschubert@sjk.law

aschubert@sjk.law

Laura Van Note*
Cody Bolce*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
Fax: (510) 891-7030
lvn@colevannote.com
cab@colevannote.com

Michael Kind*
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, NV 89123
Tel: (702) 337-2322
Fax: (702) 329-5881
Email: mk@kindlaw.com

Marc E. Dann*
Brian D. Flick*
**DannLaw**
15000 Madison Avenue
Lakewood, OH 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

Francis A. Bottini, Jr.*
Albert Y. Chang*
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Ave., Suite 102
La Jolla, CA 92037
Tel: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com
achang@bottinilaw.com

*Plaintiffs' Executive Committee*

Edward F. Haber (BBO# 215620)
Ian McLoughlin (BBO #647203)
Patrick J. Vallely (BBO# 663866)
**SHAPIRO HABER & URMY LLP**
One Boston Place, Suite 2600
Boston, MA 02108

Tel: (617) 439-3939
Fax: (617) 439-0134
ehaber@shulaw.com
imcloughlin@shulaw.com
pvallely@shulaw.com

*Interim Liaison Counsel*

**Counsel for the Plaintiffs**

*\* Admitted Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 13, 2025.

<u>/s/  James Ulwick___</u>
James Ulwick