Michael Sherman
30 Chester Ct.
Brooklyn, NY 11225
+1 908 517 6720
michael.w.sherman@gmail.com



**VIA U.S. MAIL**
Clerk of the Court
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, MA 02210

April 13, 2026

**SUBJECT: FORMAL OBJECTION TO PROPOSED SETTLEMENT**

**CASE:** *In re LastPass Data Security Incident Litigation, Case No. 1:22-cv-12047-PBS*

Dear Honorable Patti B. Saris and the Clerk of the Court,

**I. Objector Information and Proof of Class Membership**

My name is Michael Sherman, residing at 30 Chester Ct., Brooklyn, NY 11225.

I am submitting this formal legal objection to the proposed class action settlement in the above-referenced matter. I am a verified Settlement Class Member. At the time of the 2022 security incidents, I maintained an active, paid LastPass account containing over 100 encrypted vault items, mostly passwords.

**Attached to this letter as Exhibit A is a copy of the official email notice I received informing me of this settlement, serving as my documentary proof of class membership.** As a direct result of this breach, I deleted my LastPass account and personally expended approximately 20 hours of my own time migrating login credentials to an alternative password manager, 1Password, to secure my digital identity.

**II. Declaration of Counsel and Hearing Appearance**

I am submitting this objection *pro se*; I have not retained counsel to represent me in connection with this objection. I do not intend to appear at the Final Approval Hearing scheduled for July 14, 2026, in person. However, I am fully available and willing to attend via telephone or video conference should the Court request or permit remote participation. I do not plan to call any witnesses or introduce additional exhibits beyond this written objection.

**III. Statement of Objection and Legal Grounds**

This comprehensive legal objection is submitted to evaluate the proposed settlement architecture negotiated between Class Counsel and Defense Counsel. While the proposed settlement establishes an $8.2 million fund for statutory payments and documented out-of-pocket losses, alongside a separate $16.25 million Crypto Pool, it contains a profound and legally unacceptable omission: the settlement provides absolutely no mechanism for the

compensation of "lost time" or "time spent" by class members who were forced to mitigate the consequences of the breach.

Furthermore, the settlement explicitly rejects the use of "self-prepared" documentation, effectively barring the self-attested time claims that have become the standard mechanism for relief in modern data breach jurisprudence. The exclusion of lost time compensation represents a severe break from established judicial precedent across the United States, including specific precedent established within the District of Massachusetts itself.

## A. The Unique Technical Anatomy and Policy Failures of the LastPass Incident

The LastPass incident is not a standard data breach; it is the compromise of a foundational cybersecurity tool. Because of the "zero-knowledge" architecture, the exfiltration of encrypted vaults in November 2022 meant the security of the stolen data depended entirely on the length of each individual user's master password and the specific number of Password-Based Key Derivation Function 2 (PBKDF2) iterations employed to strengthen the password against brute force attacks.

When vaults are taken offline, threat actors can utilize arrays of high-powered graphics processing units (GPUs) to conduct brute-force decryption attacks at speeds of billions of guesses per second. To slow down these attacks, PBKDF2 forces the computer to perform thousands of mathematical iterations for every single password guess. However, while industry standards (such as OWASP guidelines) recommended upwards of 310,000 iterations at the time, LastPass notoriously left millions of legacy accounts stranded on obsolete, insecure defaults. Many older accounts were utilizing as few as 5,000 iterations, drastically reducing the time required for hackers to crack a stolen vault.

Furthermore, in defending against offline brute-force attacks, password length is exponentially more critical than complexity. While LastPass updated its policy in 2018 to require a 12-character minimum master password for new accounts, the company completely failed to enforce this critical security baseline for legacy users. LastPass permitted millions of existing users to continue securing their vaults with short, mathematically vulnerable passwords right up until the 2022 breach.

As a Google employee with extensive experience in software architecture, I am acutely aware of the computational realities of these offline brute-force attacks. Because LastPass failed to force a reasonable mandatory master password length on older accounts, and neglected to automatically update iteration counts to modern cryptographic standards, millions of users were immediately forced into an emergency mitigation posture, operating under the assumption that every credential stored in their vault was in imminent danger of decryption.

## B. The Temporal Burden of Password Mitigation and Article III Injury-In-Fact

I originally created my LastPass account prior to 2018. Because LastPass did not enforce its updated length requirements on my legacy account, my master password was shorter than the 12-character minimum. Consequently, my exfiltrated vault was highly susceptible to offline brute-force decryption. I did not have a choice in the matter; it was absolutely imperative that I immediately rotate all my credentials.

In a standard data breach, mitigation generally consumes two to five hours (e.g., freezing credit, monitoring accounts). A breach involving a password manager represents a systemic collapse of a user's entire digital security perimeter. The average digital consumer maintains over one hundred active passwords. The time-motion mechanics of logging in, navigating security settings, handling multi-factor authentication, generating a novel password, and saving it requires a **minimum** of three to five minutes per account.

For an average user, this mandates between 5 and 8.5 hours of uninterrupted labor. In my own case, due to the imminent threat posed by my legacy password length and the large number LastPass vault items, migrating and securing my accounts required roughly 20 hours. By denying compensation for this specific, quantifiable expenditure of time, the settlement ignores the primary, universal injury suffered by the vast majority of the class.

Under *Dieffenbach v. Barnes & Noble, Inc.*, 886 F.3d 626 (7th Cir. 2018) and *Anderson v. Hannaford Bros. Co.*, 659 F.3d 151 (1st Cir. 2011), the time value of money and lost time are legally actionable injuries. Indeed, the District Court in this very litigation explicitly acknowledged that plaintiffs' "lost time and related mitigation efforts... constitutes injury in fact" (*LastPass*, 2024 WL 3580646). It represents a profound contradiction for a court to recognize "lost time" as the basis for Article III standing, only for Class Counsel to negotiate a settlement that assigns a monetary value of exactly zero to that judicially recognized injury.

## C. The Unprecedented Departure from Settlement Norms and Anticipated Defenses

Under Federal Rule of Civil Procedure 23(e)(2), a settlement must be "fair, reasonable, and adequate." The LastPass settlement fails this test when compared to prevailing legal standards. Modern mega-breach settlements universally compensate self-attested lost time:

- **Equifax:** Up to 20 hours at $25/hour (10 hours self-attested).
- **T-Mobile:** Up to 15 hours at $25/hour (5 hours self-attested).
- **Shields Health Care Group (*D. Mass., Judge Saris*):** Up to 20 hours at $30/hour, explicitly allowing for "Ordinary Attested Time" separate from out-of-pocket losses.

If a healthcare data breach justifies twenty hours of compensable lost time at $30 per hour, it defies logic and equity that a password manager breach justifies zero hours.

Proponents of the settlement may argue that allowing self-attested lost time would instantly deplete the $8.2 million ordinary loss fund. However, under Rule 23(e)(2)(D), a settlement must treat class members equitably relative to each other. A settlement architecture that "protects" a fund by making it procedurally impossible for the largest injured subset of the class to claim appropriate damages is inherently inequitable.

Furthermore, any argument that processing self-attested claims is administratively impossible or invites fraud is neutralized by recent history. If the settlement administrators for the T-Mobile and Equifax breaches—involving hundreds of millions of consumers—could successfully implement fraud-detection algorithms to process self-certified lost time, the Settlement Administrator can do the same for the LastPass class.

## D. The Impracticability of the "Self-Prepared" Documentation Ban and Proxy Defenses

The settlement's ban on "self-prepared" documentation establishes an illusory claims process. When a user sits at their computer for 20 hours securing their digital life, no third party generates a receipt for that labor. The only possible documentation is a personal log and a sworn declaration.

Class Counsel may argue that the $25 statutory payment was designed to act as a frictionless proxy for this lost time, treating the mitigation effort as a minor inconvenience. However, this ignores the technical reality of the breach. As outlined in Sections III-A and III-B, the severe cryptographic vulnerabilities caused by low PBKDF2 iterations and unenforced legacy password lengths meant that class members were forced into a mandatory, emergency mitigation protocol. Because the exfiltrated LastPass vaults were weak against offline cracking, users had no choice but to immediately undertake the massive labor of rotating all of their passwords. This proves that $25 (the equivalent of a single hour of standard compensation) is completely divorced from the multi-hour reality of securing a compromised password manager. Furthermore, the $10,000 "Extraordinary Losses" tier offers no protection for this required labor, as it demands third-party financial receipts.

## IV. Conclusion and Prayer for Relief

The proposed settlement severely favors a niche sub-class of cryptocurrency claimants while entirely ignoring the quantifiable temporal losses of ordinary users. To fulfill the strict requirements of fairness, reasonableness, and adequacy mandated by Rule 23, I respectfully request that the Court reject the proposed settlement agreement or require the settling parties to amend the architecture to incorporate a standard, self-attestable "lost time" compensation tier at a prevailing rate of $25 to $30 per hour.

## V. Rule 11 AI Certification

I certify under penalty of perjury pursuant to Fed. R. Civ. P. 11 that while generative artificial intelligence was used to assist in the drafting, structural organization, and formatting of this objection, I have independently reviewed the document, verified all factual statements regarding my personal experience and class membership, and manually verified the existence, applicability, and accuracy of all legal citations and prior settlements referenced herein.

Respectfully submitted,

_____  4/13/26

Michael Sherman, Settlement Class Member


CC:

**Settlement Administrator:**

LastPass Data Security Incident Litigation
P.O. Box 2230
Portland, OR 97208-2230

**Class Counsel:**

Nathaniel L. Orenstein
Berman Tabacco
One Liberty Square
Boston, MA 02109
*(As Representative of Plaintiffs)*

**Defense Counsel:**

Christopher A. Wiech
Baker & Hostetler LLP
1700 Peachtree Street, Suite 2400
Atlanta, GA 30309

---

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I caused a true and correct copy of the foregoing Formal Objection, along with all attached exhibits, to be served via First-Class U.S. Mail, postage prepaid, upon Class Counsel, Defense Counsel, and the Settlement Administrator at the addresses listed above.

_____ 4/13/26

Michael Sherman