**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

***In re LastPass Data Security Incident Litigation***

**Case No. 1:22-cv-12047-PBS**

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR AN AWARD OF**
**ATTORNEYS' FEES, COSTS AND EXPENSES, AND SERVICE AWARDS**

# TABLE OF CONTENTS


I. FACTUAL AND PROCEDURAL BACKGROUND ........ 2

A. Plaintiffs' Counsel Performed High-Quality Work for the Benefit of the Class ........ 2

1. Pre-Filing Investigation and Research, Consolidation, and Filing of Complaints .... 3

2. Defendant's Motion to Dismiss the Consolidated Complaint ........ 3

3. Extensive Discovery, Factual Investigation, and Analysis ........ 3

4. Preparation for Class Certification ........ 4

5. Mediation and Subsequent Negotiations ........ 4

6. Obtaining Preliminary Approval of the Settlement ........ 6

7. Post-Preliminary Approval Work ........ 6

B. The Terms of the Settlement ........ 7

C. Plaintiffs' Counsel's Fee Request ........ 7

II. PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND ........ 8

III. FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE ........ 9

A. The Size of the Fund and the Number of Persons Benefitted ........ 9

B. The Skill, Experience, and Efficiency of the Attorneys Involved ........ 11

C. The Complexity and Duration of the Litigation ........ 11

D. The Risks of the Litigation ........ 11

E. The Amount of Time Devoted to the Case by Counsel ........ 13

F. Awards in Similar Cases ........ 13

G. Public Policy Considerations ........ 14

H. The Reaction of the Class ........ 15

I. The Lodestar Cross-Check Supports the Reasonableness of the Requested Fee ........ 17

IV. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR REASONABLE LITIGATION COSTS AND EXPENSES ........ 19

V. THE PROPOSED SERVICE AWARDS SHOULD BE APPROVED ........ 20

VI. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*,
512 F. Supp. 3d 196 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*,
25 F.4th 55 (1st Cir. 2022) .......... 20

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
2017 WL 5177610 (D. Mass. Nov. 8, 2017) .......... 13

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) .......... 15

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .......... 8

*In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*,
2014 WL 4446464 (D. Mass. Sept. 8, 2014) .......... 13, 20

*DMO Norwood LLC v. Kia Am., Inc.*,
706 F. Supp. 3d 137 (D. Mass. 2023) .......... 19

*In re Fidelity/Micron Sec. Litig.*,
167 F.3d 735 (1st Cir. 1999) .......... 8, 19

*Fox v. Iowa Health Sys.*,
2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .......... 12

*In re FUG Telecom Holdings, Ltd. Sec. Litig.*,
2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) .......... 18

*Fulton-Green v. Accolade, Inc.*,
2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) .......... 12

*In re Hannaford Bros. Customer Data Sec. Breach Litig.*
293 F.R.D. 21 (D. Me. 2013) .......... 12

*Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)*,
58 F. Supp. 3d 167 (D. Mass. 2014) .......... 9, 18

*Herb v. Homesite Grp. Inc.*,
2024 WL 3593918 (D. Mass. July 31, 2024) .......... 18

*Hill v. State St. Corp.*,
2015 WL 127728 (D. Mass. Jan. 8, 2015) ....... 11, 18, 19

*Insulet Corp. v. EOFlow Co.*,
2026 WL 309573 (D. Mass. Feb. 5, 2026) ....... 19

*Lauture v. A.C. Moore Arts & Crafts, Inc.*,
2017 WL 6460244 (D. Mass. June 8, 2017) ....... 20

*Linnear v. Illinicare Health Plan, Inc.*,
2019 WL 13072750 (N.D. Ill. 2019) ....... 14

*In re Lupron Mktg. & Sales Practices Litig.*,
2005 WL 2006833 (D. Mass. Aug. 17, 2005) ....... 8, 11, 17

*In re Lupron*,
228 F.R.D. 75 (D. Mass. 2005) ....... 15

*McAdams v. Robinson*,
26 F.4th 149 (4th Cir. 2022) ....... 13, 16

*McDonough v. Toys R Us, Inc.*,
80 F. Supp. 3d 626 (E.D. Pa. 2015) ....... 13

*Meyenburg v. Exxon Mobil Corp.*,
2006 WL 2191422 (S.D. Ill. 2006) ....... 14

*New England Carpenters Health Benefits Fund v. First Databank, Inc.*,
2009 WL 3418628 (D. Mass. Oct. 20, 2009) ....... 9

*Owings v. Medusind, Inc.*,
2026 WL 199302 (S.D. Fla. Jan. 26, 2026) ....... 12

*In re Puerto Rican Cabotage Antitrust Litig.*,
815 F. Supp. 2d 448 (D.P.R. 2011) ....... 9, 14

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ....... 11, 16

*Roberson v. Maestro Consulting Servs., LLC*,
2024 WL 4785359 (S.D. Ill. 2024) ....... 14

*Roberts v. TJX Companies, Inc.*,
2016 WL 8677312 (D. Mass. Sept. 30, 2016) ....... 8

*Robinson v. Nat'l Student Clearinghouse*,
14 F.4th 56 (1st Cir. 2021) ....... 16

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
56 F.3d 295 (1st Cir. 1995) .......... 8, 9, 17

*In re Tyco Int'l Ltd. Multidistrict Litig.*,
535 F. Supp. 2d 249 (D.N.H. 2007) .......... 14, 16, 17

*In re Veeco Instruments Inc. Sec. Litig,*
2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) .......... 18

*In re VW & Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155 (D. Mass. 2015) .......... 18

*White v. Kroger Ltd. P'ship I*,
2024 WL 3343021 (S.D. Ill. 2024) .......... 14

Pursuant to Fed. R. Civ. P. 23(h), 52(a), and 54(d)(2), Plaintiffs Amy Doermann, Ayana Looney, Dan LeFebvre, David Andrew, Erik Brook, Glenn Mulvenna, Hui Li, Nathan Goldstein, Noah Bunag, R. Andre Klein, Sarb Dhesi, Steven Carter, Debt Cleanse Group Legal Services LLC, and Hustle N Flow Ventures LLC ("Plaintiffs" or "Settlement Class Representatives")—having achieved a settlement that creates a $8.2 million non-reversionary Settlement Fund and a separate Crypto Pool, under which LastPass has agreed to make available up to $16.25 million to compensate Settlement Class Members who suffered cryptocurrency losses caused by the Incident—submit this memorandum of law in support of their motion for an award of attorneys' fees, costs and expenses, and Service Awards.[1]

Plaintiffs seek an award of attorneys' fees of one-third of the $8,200,000 Settlement Fund, and one-third of the value of each Valid Claim submitted under the Crypto Pool, plus costs and expenses. *See* Dkt. 305-1, SA §§ 24, 72. Plaintiffs' counsel worked more than 14,000 hours on this matter from its inception through April 30, 2026, with a total lodestar of more than $12,847,477.95 during that time period. *See* Declaration of Class Counsel in Support of Plaintiffs' Motion for an Award of Attorneys' Fees, Costs and Expenses, and Service Awards ("Co-Lead Fee Decl.") ¶¶ 14, 56, filed concurrently herewith. Plaintiffs' counsel also incurred and seek reimbursement of $405,364.71 in litigation costs and expenses. Co-Lead Fee Decl. ¶ 57. Plaintiffs also request Service Awards in the amount of $10,000 for each of the Class Representatives to compensate them for the time and effort spent pursuing the Action on behalf of the Settlement Class. SA §§ 18, 52, 71. Defendant takes no position on this request for attorneys' fees, costs,

[1] Unless otherwise defined herein, all capitalized terms have the definitions set forth in the Class Action Settlement Agreement and Release ("Settlement" or "SA"). *See* Dkt. 305-1. References to "§" are to sections of the Settlement Agreement.

expenses, and Service Awards. SA §§ 71-2.

Because the number and amount of Valid Claims submitted under the Crypto Pool will be unknown at the time of final approval, Plaintiffs will submit a supplement to this application for disbursement of attorneys' fees in connection with the Crypto Pool at the conclusion of that process. Plaintiffs respectfully request that the Court award attorneys' fees, costs, expenses, and Service Awards in connection with the Settlement Fund as part of Final Approval.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Counsel Performed High-Quality Work for the Benefit of the Class

In its Amended Pretrial Order No. 1 (entered on April 18, 2023), the Court appointed Nathaniel Orenstein, Amy Keller, and Nicholas Migliaccio as Interim Co-Lead Counsel for all Plaintiffs in the related actions, and appointed Michael Reese as Interim Co-Lead Counsel for the California Subclass. *See* Dkt. 74. In accordance with their duties assigned under the order, counsel undertook certain tasks and delegated other tasks to other Plaintiffs' counsel in a manner to avoid duplicative efforts and ensure that representation of Plaintiffs and Class Members was conducted effectively and efficiently. *See* Dkt. 74, p.7, ¶ p; *see also* Co-Lead Fee Decl. ¶¶ 8, 12, 14. As set forth in the Co-Lead Fee Decl., Plaintiffs' counsel expended significant effort in bringing about this Settlement on behalf of the Class. Co-Lead Fee Decl. ¶¶ 13-49. Defendant's skilled attorneys mounted a strong defense at every stage, first in the litigation context, and then during mediation (including pre-mediation discovery) and months of follow-up negotiations.

Plaintiffs' counsel worked more than 14,000 hours on this matter from its inception through April 30, 2026, with a total lodestar of more than $12,847,477.95 during that time period. *Id.* A summary of Plaintiffs' counsel's work is provided below.

### 1. Pre-Filing Investigation and Research, Consolidation, and Filing of Complaints

Plaintiffs' counsel conducted pre-filing investigation into the merits of the case, including a factual analysis, researched applicable laws and regulations, and considered potential legal issues and the viability of the claims asserted. Eleven class action lawsuits were transferred and consolidated in the United States District Court for the District of Massachusetts, into one consolidated class action lawsuit. Co-Lead Fee Decl. ¶ 15. After consolidation, Plaintiffs' counsel vetted potential plaintiffs to ensure their suitability as proposed class representatives and to confirm Article III standing. Co-Lead Fee Decl. ¶ 16. Plaintiffs filed a Consolidated Class Action Complaint on August 4, 2023. Co-Lead Fee Decl. ¶ 17 (citing Dkt. 86).

### 2. Defendant's Motion to Dismiss the Consolidated Complaint

On September 18, 2023, LastPass filed a motion to dismiss the Consolidated Complaint. Co-Lead Fee Decl. ¶ 19 (citing Dkt. 92). Plaintiffs' counsel researched, drafted, and filed an opposition brief. *Id.* (citing Dkt. 103). On January 4, 2024, the Court held a hearing on LastPass's motion to dismiss, where the Court stayed discovery pending a ruling on the motion. Co-Lead Fee Decl. ¶ 20 (citing Dkts. 114-15). On July 30, 2024, the Court issued its Order (Dkt. 126) granting in part and denying in part LastPass's motion to dismiss. Co-Lead Fee Decl. ¶ 20.

### 3. Extensive Discovery, Factual Investigation, and Analysis

Plaintiffs and LastPass engaged in significant discovery. Plaintiffs and LastPass served and responded to interrogatories and document requests. Plaintiffs' counsel negotiated a Stipulated Protocol for Producing Documents and Electronically Stored Information ("ESI"). Thereafter, Plaintiffs' counsel negotiated search terms, custodians, and time periods for collection of ESI from LastPass in connection with responding to Plaintiffs' First Set of Requests for Production of Documents. LastPass produced on a rolling basis, ultimately producing 22,056 documents

spanning 116,967 pages which were reviewed by Plaintiffs' counsel. Co-Lead Fee Decl. ¶¶ 21-22. Plaintiffs' counsel took the depositions of seven current and former LastPass employees and served third party subpoenas on GoTo Technologies USA, Francisco Partners Management, and Elliot Investment Management. The subpoenaed parties filed a motion to quash the subpoenas, and Plaintiffs' counsel drafted and filed an opposition to the motion to quash, which was pending when the parties agreed to settle. Co-Lead Fee Decl. ¶¶ 22-24. Plaintiffs' counsel also responded to LastPass's document requests, retained a forensic expert to obtain, preserve, and assist with the production of responsive documents, ultimately reviewing and analyzing over 20,000 documents, and producing more than 2,000 relevant, responsive, non-privileged documents on behalf of fourteen Plaintiffs, each of whom sat for depositions. Co-Lead Fee Decl. ¶¶ 25-26. The Parties had substantially completed all discovery by June 30, 2025. Co-Lead Fee Decl. ¶¶ 27-28.

### 4. Preparation for Class Certification

Plaintiffs' counsel also performed significant work in preparing the case to proceed to class certification, including the hiring of experts and preparation of expert reports. Plaintiffs' counsel retained an expert on dark web identification of data, another expert to analyze the cryptocurrency theft that occurred as a result of the Incident, and an expert regarding class wide economic damages. Plaintiffs ultimately did not file a motion for class certification because the Parties agreed to the Settlement. Co-Lead Fee Decl. ¶¶ 29-31.

### 5. Mediation and Subsequent Negotiations

The Parties commenced settlement discussions in advance of a two-day private mediation before Bruce A. Friedman, Esq., with JAMS, on February 5–6, 2025. Prior to mediation, the Parties engaged in certain informal discovery including the exchange of extensive information about the Incident. Despite two days of good faith, hard-fought negotiations, no agreement was reached at the mediation. Co-Lead Fee Decl. ¶¶ 32-34. Thereafter, the Parties continued negotiations while

litigating the case and conducting discovery. On April 22, 2025, Plaintiffs filed a motion for leave to amend the complaint to add GoTo Technologies USA, Elliott Investment Management, Francisco Partners Management, and Francisco Partners Consulting as defendants, along with a supporting memorandum of law. Co-Lead Fee Decl. ¶ 35 (citing Dkts. 184-185). While the motion for leave to amend and discovery motions were pending, the Parties sought the assistance of Magistrate Judge M. Page Kelley and requested that she convene a settlement conference. On June 25, 2025, the Parties participated in an all-day settlement conference with Judge Kelley and made substantial progress but ultimately did not resolve the case on that date. However, the Parties continued to negotiate with Judge Kelley's assistance and supervision in an attempt to reach an agreement. Co-Lead Fee Decl. ¶¶ 36-37.

Between July and October 2025, the Parties continued arm's-length negotiations and additional discovery—facilitated by Judge Kelley and informed by substantial information exchanges—and the Parties executed a settlement term sheet on October 31, 2025. The Parties then spent additional time negotiating the details of the Settlement. Plaintiffs' counsel took the lead in drafting the Settlement Agreement and all of the exhibits thereto, specifically: a Cryptocurrency Theft Claims Process, a Claim Form for Settlement Class Members to submit for various categories of relief, a Long-Form Notice, an Email Notice, and a proposed Preliminary Approval Order. Co-Lead Fee Decl. ¶¶ 38-40.

Settlement negotiations were hard-fought and conducted at arm's-length by experienced counsel on both sides, with the benefit of substantial formal and informal discovery sufficient to enable an intelligent assessment of the claims, defenses, and risks. The Settlement Agreement was executed on December 19, 2025. Co-Lead Fee Decl. ¶ 41.

### 6. Obtaining Preliminary Approval of the Settlement

Plaintiffs' counsel researched and drafted a motion for preliminary approval of the Settlement, and a supporting memorandum, which were filed on December 23, 2025. Co-Lead Fee Decl. ¶ 42 (citing Dkts. 303-304). On January 8, 2026, the Court held a hearing on the motion for preliminary approval, at which time the Settlement Agreement and its exhibits were discussed. After the preliminary approval hearing, the Parties continued to work to address the questions raised by the Court, including by meeting with proposed Special Master Bruce Friedman and incorporating his suggestions. Plaintiffs' counsel negotiated and submitted supplemental papers in support of the motion for preliminary approval on January 23, 2026, including a revised Notice and Preliminary Approval Order. Co-Lead Fee Decl. ¶¶ 43-45 (citing Dkt. 310). On February 2, the Court granted preliminary approval. Co-Lead Fee Decl. ¶ 46 (citing Dkt. 311).

### 7. Post-Preliminary Approval Work

After obtaining preliminary approval, Plaintiffs' counsel worked with the Settlement Administrator to ensure the Notice was provided in accordance with the terms of the Settlement Agreement and Preliminary Approval Order. Plaintiffs' counsel has been communicating with Settlement Class Members to assist them with the Settlement claims process and will continue to do so throughout the claims period. Co-Lead Fee Decl. ¶¶ 47-48. Plaintiffs' counsel has also expended further efforts to usher the Settlement Agreement to a final judgment not subject to appeal, including by filing a motion for final approval, preparing for and attending the final approval hearing, responding to any objections, and assisting the Settlement Administrator in administering the Settlement as needed. Co-Lead Fee Decl. ¶ 49.

### B. The Terms of the Settlement

After more than three years of litigation and months of hard-fought negotiations, the Parties reached an agreement that resolves the litigation and provides substantial relief to the Settlement Class. Plaintiffs refer to and incorporate Section II of the memorandum of law in support of their motion for preliminary approval. *See* Dkt. 304, pp. 8-11. Plaintiffs incorporate the terms of the Settlement Agreement by reference. *Id.*

### C. Plaintiffs' Counsel's Fee Request

Class Counsel request an award of fees in the amount of one-third of the $8,200,000 cash Settlement Fund (*i.e.*, $2,733,333.33), and one-third of the amount of each Valid Claim submitted under the Crypto Pool. SA § 72, plus expenses of $405,364.71. In making this request, Class Counsel have excluded the value of non-monetary benefits available to the class, which—as described herein—are substantial. Class Counsel requests that the Court award the Settlement Fund fees first, during the final approval process, and the fees for the Crypto Pool after that process has concluded. The total dollar amount of attorneys' fees is contingent upon the total dollar amount of Valid Claims for cryptocurrency losses, which will not be known until after the deadline for Cryptocurrency Claimants to submit claims passes and the Special Master adjudicates claims submitted by Cryptocurrency Claimants. SA § 62. The Crypto Pool has an aggregate cap of $16,250,000. SA §§ 24, 70, 72. One-third of the Crypto Pool amounts to $5,416,666.67 if the total amount of Valid Claims exhausts the entire Crypto Pool. Thus, the maximum ***potential*** award of fees, costs, and expenses from the Settlement Fund and the Crypto Pool amounts to $8,553,920.45, (*i.e.*, one-third from the Settlement Fund, plus one-third from the Crypto Pool, added to Plaintiffs' counsels' costs). Co-Lead Fee Decl. ¶ 50. This request is equal to only 10.5% of the total possible recovery, including non-monetary benefits to the class, as further described below.

Class Counsel's request for attorneys' fees, costs, and expenses is reasonable based on the concrete benefits achieved for the Class and applicable legal principles, as set forth below.

## II. PLAINTIFFS' COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES FROM THE COMMON FUND

It is well-settled that attorneys who have achieved a benefit for class members are entitled to compensation for their services. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also In re Fidelity/Micron Sec. Litig.*, 167 F.3d 735, 737 (1st Cir. 1999) ("[L]awyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."). Fed. R. Civ. P. 23(h) expressly authorizes the court to award, in its discretion, "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

The First Circuit utilizes two methods for calculating attorneys' fees in the context of class action litigation: the "percentage of fund" or "POF" method and the "lodestar" method. *See Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *9 (D. Mass. Sept. 30, 2016); *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995)). Although the First Circuit has declared that the district court has a choice as to whether to use the POF or lodestar approach, a majority of courts in this circuit rely heavily on the POF calculation in determining the reasonableness of fee awards. *See e.g. In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005) (collecting authority); *In re Thirteen Appeals*, 56 F.3d at 307 (use of the POF method in common fund cases is the prevailing method). Accordingly, the Court should apply the POF method with a lodestar cross-check for Plaintiffs' counsel's request for fees, costs, and expenses.

## III. FACTORS CONSIDERED BY COURTS IN THE FIRST CIRCUIT CONFIRM THAT THE REQUESTED FEE IS FAIR AND REASONABLE

Although the First Circuit has not explicitly adopted a set of factors to be used in determining whether the percentage of the common fund requested as attorneys' fees is reasonable, courts within this Circuit have considered the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*Harden Mfg. v. Pfizer, Inc (In re Neurontin Mktg. & Sales Practices Litig.)*, 58 F. Supp. 3d 167, 170 (D. Mass. 2014) (quoting *In re Lupron*, 2005 WL 2006833, at *3). Courts have also considered the reaction of the named plaintiff and the class. *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 473 (D.P.R. 2011). In addition, although "[t]he First Circuit does not require a court to engage in calculating the lodestar method when awarding fees based upon the percentage of the fund method," courts within this Circuit have performed lodestar cross-checks to "ensure[] that fees awarded under the percentage of the fund method are reasonable in light of the amount of work counsel actually performed." *Id.* at 464–65. *See also*, *In re Thirteen Appeals*, 56 F.3d at 307; *see also New England Carpenters Health Benefits Fund v. First Databank, Inc.*, 2009 WL 3418628, at *1 (D. Mass. Oct. 20, 2009) (determining that lodestar is enough of a cross-check on the POF method; a full audit of all attorneys' fees and costs was too cumbersome and time-consuming).

### A. The Size of the Fund and the Number of Persons Benefitted

Typically, the most important factor in determining a reasonable percentage of the fund is the size of the fund created. Manual for Complex Litigation § 14.121 (4th ed. 2004) (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 14:6, at 547, 550 (4th ed. 2002))

(nothing that, generally, the factor given the greatest emphasis is the size of the fund created, because a common fund is itself the measure of success and represents the benchmark from which a reasonable fee will be awarded).

Here, the Settlement Class consists of more than 4,000,000 individuals and the non-reversionary Settlement Fund of $8.2 million, along with a separate $16.25 million Crypto Pool, constitutes a substantial settlement. SA §§ 24, 70, 72. These amounts together create a total potential cash value of the Settlement of $24,450,000. Additionally, while the exact number of individuals who suffered cryptocurrency losses is unknown, based on Settlement Class Counsel's investigation, it is a much smaller subset of the 4,000,000 individuals. Each Settlement Class Member may submit a claim for up to $900,000 in alleged cryptocurrency losses, to be adjudicated by a Court-appointed Special Master, assisted by a cryptocurrency forensics expert. SA § 77(c). All monetary benefits will be distributed on a *pro rata* basis after deduction of Settlement Administration Costs, Service Awards, Plaintiffs' counsel's approved fees, costs, and expenses, and CAFA Notice expenses. SA §§ 78-79.

The Settlement also provides that eligible Settlement Class Members will receive In-Kind Relief, including a complimentary 6-month upgrade to a Consumer Premium Account for Consumer Free Account users. SA § 76(a). This upgrade has a value of $18 for each Consumer Free Account user. *See* https://www.lastpass.com/pricing. With 3.12 million free account holders eligible for this relief, valued at $3/month for six-months ($18 per account holder), this In-Kind relief is potentially valued at more than $56.16 million. Dark Web Monitoring is also included with the In-Kind relief, further increasing the value. The total value of the Settlement relief is, conservatively, approximately $80.6 million.

**B. The Skill, Experience, and Efficiency of the Attorneys Involved**

Plaintiffs' counsel have significant experience in class action litigation, including data breach litigation, and have negotiated several other substantial class action settlements throughout the country. Co-Lead Fee Decl. ¶¶ 2-5. The credentials of Mr. Orenstein, Ms. Keller, Mr. Migliaccio, and Mr. Reese are further detailed in their firm resumes. *See* Dkt. 305-8 (Berman Tabacco), Dkt. 305-9 (DiCello Levitt LLP), Dkt. 305-10 (Migliaccio & Rathod LLP), Dkt. 305-11 (Reese LLP). Class Counsel believe the work performed under their direction and supervision was handled effectively, efficiently, and economically, and that this time was reasonably and justifiably incurred. Co-Lead Fee Decl. ¶ 12. Similarly, the rest of Plaintiffs' counsel also have extensive experience litigating and resolving complex class action litigation. *Id*.

**C. The Complexity and Duration of the Litigation**

The requested fee is further supported by Plaintiffs' counsel's diligent litigation of this action for more than three years on behalf of a large consumer class, completing fact discovery (with the exception of a few discovery disputes), fully briefing a motion to add parties to the complaint, and preparing class certification briefing. Co-Lead Fee Decl. ¶ 13. "Class actions are . . . by their nature more complex than individual actions." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 81 n.22 (D. Mass. 2005) (internal citation omitted). As detailed in Section II.B, *supra*, Plaintiffs' counsel successfully navigated these complex issues and achieved a favorable result for Plaintiffs and the Settlement Class.

**D. The Risks of the Litigation**

Plaintiffs' counsel undertook a significant risk in litigating this matter without any guarantee of compensation. *See Hill v. State St. Corp*., 2015 WL 127728, at *18 (D. Mass. Jan. 8, 2015) ("The court considers this contingency risk in awarding attorneys' fees."); *In re Lupron*,

2005 WL 2006833, at *4 ("Many cases recognize that the risk assumed by an attorney is 'perhaps the foremost factor' in determining an appropriate fee award.") (internal citation omitted). The risks and uncertainties that are inherent in any litigation are more pronounced in data breach litigation. Due to the rapidly evolving law surrounding data breach cases, they generally face more substantial hurdles in litigation. *See*, *e.g.*, *In re Hannaford Bros. Customer Data Sec. Breach Litig*. 293 F.R.D. 21, 35 (D. Me. 2013) (denying class certification in cybersecurity incident class action litigation). Because data breach litigation is a rapidly evolving field, there is even more unpredictability as to the ultimate result than in other types of litigation. *See Fox v. Iowa Health Sys*., 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach litigation is evolving; there is no guarantee of the ultimate result ... [they] are particularly risky, expensive, and complex."); *Owings v. Medusind, Inc.*, 2026 WL 199302, at *9 (S.D. Fla. Jan. 26, 2026) ("[D]ata breach class actions are risky cases.") (citations omitted); *Fulton-Green v. Accolade, Inc*., 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (explaining data breach class actions are "a risky field of litigation because [they] are uncertain and class certification is rare.").

While the outcome here was successful, recovery at the outset of the case was far from assured. LastPass disputes Plaintiffs' factual allegations and claims, and characterization of events, evidence, and LastPass's services and cybersecurity. LastPass further denies any wrongdoing or liability to Plaintiffs or the putative Class they seek to represent. LastPass would vigorously contest class certification. Even if a class were certified, LastPass would contest the underlying claims at summary judgment and, if unsuccessful in obtaining the desired summary judgment, at trial. Moreover, if Plaintiffs successfully navigated these obstacles and obtained a favorable decision at trial, Plaintiffs would be virtually certain to further face the substantial delay and risk of adverse rulings on appeal. Finally, based on Plaintiffs' understanding of Defendant's business and

operations, it is uncertain that LastPass would be able to satisfy a judgment beyond its wasting insurance policies. Although Plaintiffs believe that they have strong positions on these issues and that their case has merit, litigation such as this is inherently risky, and there is always a possibility that Plaintiffs would not prevail and that they and the Class would be left with no recovery. Despite these uncertainties, Plaintiffs' counsel litigated this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of attorney time and a significant advance of litigation expenses with no guarantee of any compensation.

**E. The Amount of Time Devoted to the Case by Counsel**

Plaintiffs' counsel have devoted a significant amount of time to this litigation. *See* Section II.B., *supra*. The substantial time and effort Plaintiffs' counsel spent vigorously litigating this action was critical in achieving this favorable result and further supports the reasonableness of the requested fee. The Declarations of Plaintiffs' counsel describe their efforts and list the hours each attorney worked in the prosecution of this litigation. The substantial time and effort Plaintiffs' counsel spent vigorously litigating this action were critical in achieving this favorable result. Co-Lead Fee Decl. ¶ 54.

**F. Awards in Similar Cases**

"Although the First Circuit has not set a presumptive benchmark for percentage of fund awards, other courts in the Circuit have noted that such benchmark has been between twenty to thirty-five percent." *Bacchi v. Massachusetts Mut. Life Ins. Co.*, 2017 WL 5177610, at *4 (D. Mass. Nov. 8, 2017). Courts in this and other jurisdictions have repeatedly granted fee requests of the same or similar percentage of the fund sought by Plaintiffs here. *See*, *e.g.*, *In re Celexa & Lexapro Mktg. & Sales Pracs. Litig.*, 2014 WL 4446464, at *8 (D. Mass. Sept. 8, 2014) (awarding fees of

up to 37% of fund, depending on dollar amount of claims paid); *McAdams v. Robinson*, 26 F.4th 149, 162 (4th Cir. 2022) (approving attorney fee award of 43% of the common fund noting it was reasonable because it was less than the lodestar figure); *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) (In this District, "fee awards generally range between nineteen and forty-five percent of the common fund.") (collecting cases); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422, at *2 (S.D. Ill. 2006) (one-third to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace); *Roberson v. Maestro Consulting Servs., LLC*, 2024 WL 4785359 (S.D. Ill. 2024) (awarded fee of 40% of $2.8 million gross settlement fund); *White v. Kroger Ltd. P'ship I*, 2024 WL 3343021 (S.D. Ill. 2024) (awarded fee of 35% of $11,782,800 gross settlement fund); *Linnear v. Illinicare Health Plan, Inc.*, 2019 WL 13072750 (N.D. Ill. 2019) (awarded fee of 35% of $2.5 million gross settlement fund). Co-Lead Fee Decl. ¶ 52.

### G. Public Policy Considerations

"Class action plaintiffs' attorneys provide an invaluable service by aggregating the seemingly insignificant harms endured by a large multitude into a distinct sum where the collective injury can then become apparent." *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d at 463; *In re Tyco Int'l Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007) ("Without a fee that reflects the risk and effort involved in this litigation, future plaintiffs' attorneys might hesitate to be similarly aggressive and persistent.").

Here, Plaintiffs' counsel efficiently and effectively achieved a favorable result for those affected by the Incident. Accordingly, public policy considerations support the requested fee to reward Plaintiffs' counsel.

### H. The Reaction of the Class

The requested fee is supported by the reaction of the Class, which has been positive. Against the 144,845 claims submitted, only four objections to the Settlement have been filed, and only one of those objections is to the requested fees and expenses. Out of millions of Settlement Class Members, only thirty-seven (37) have opted out.[2]

The reaction of a class to a settlement is analyzed by comparing the number of objectors and opt outs with the number of claimants, and by assessing the extent to which notice effectively reached absent class members. *In re Lupron Marketing and Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005).

As noted above, the Settlement Class consists of more than 8,000,000 unique, identified Settlement Class Members. Declaration of Cameron R. Azari, Esq., ¶ 10. The Notice Program was extraordinarily effective. Direct notice of the proposed Settlement Agreement was sent to 8,333,297 identified Settlement Class Members. *See* Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Proposed Class Action Settlement (citing Declaration of Cameron R. Azari, Esq.), filed contemporaneously herewith. The Notice Program provided an 82% direct reach to the identifiable Settlement Class Members. *See id.* The Settlement Administrator has fielded 1,493 calls to the toll-free telephone number, with 790 of those including speaking with a service agent, and there have been 875,083 web page views of the Settlement website. *See id.* These facts support the effective reach of the Notice Program.

The Parties also anticipate an increased response rate by the end of the claims period on July 2, 2026. *Id.* To date, of the more than 8.3 million Settlement Class Members who received

[2] Opt-outs are a feature and not a bug of this settlement. Because of the $900,000 cap on crypto claims, Settlement Class Members facing larger cryptocurrency losses are expected to opt-out of the settlement.

direct notice of the proposed Settlement, only thirty-seven (37) have requested exclusion, which represents less than 0.0004% of the reachable Class. *Id*. Further, only four objections to the Settlement have been received, which represents less than 0.00006% of the reachable Class. *Id.* Other courts have found under similar facts that the class's overall positive reaction to the settlement supported the fees sought. *See, e.g., Bezdek v. Vibram USA Inc.*, 79 F. Supp. 3d 324, 347 (D. Mass.), *aff'd*, 809 F.3d 78 (1st Cir. 2015) (finding where a settlement produced 154,927 claims with only 23 opt outs and 3 objections demonstrated an overwhelming positive reaction of the class to the settlement) (citing *In re Relafen Antitrust Litig.*, 231 F.R.D. at 72 (reaction to settlement was positive with 5,489 claims, 140 opt outs, and 10 objections)); *In re Lupron*, 228 F.R.D. at 75 (reaction to settlement was positive with 10,614 consumer claims, 49 opt outs, and 10 objectors); *see also In re Tyco.*, 535 F. Supp. 2d at 257-58 (finding the reaction of the class to the settlement was almost entirely positive where 2.4 million copies of the Notice was mailed to potential class members, 74,655 claim forms were received, there were 288 requests for exclusion and twenty-eight objections).

Only one of the four objections complains that the requested attorneys' fees purportedly diminish the relief for impacted Class Members. *See* Objection of Kevin Stewart ("Stewart Objection"). This argument is without merit. Where "the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *Robinson v. Nat'l Student Clearinghouse*, 14 F.4th 56, 59 (1st Cir. 2021) (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 32-33 (1st Cir. 2009)). In *Robinson*, class member Camarena submitted an objection to a class action settlement and objected on several bases, including the sufficiency of the recovery for class members, and the attorneys' fees sought for class counsel. *Robinson*, 14 F.4th at 59. The district court overruled Camarena's objections. On

appeal, the First Circuit affirmed, finding that the district court properly credited both parties' arguments that settlement was preferable to continued litigation given the litigation risks for both sides.

The Stewart Objection should be rejected because the Parties negotiated at arm's length with the assistance of two mediators—Bruce Friedman and Judge Kelley—after conducting significant discovery, and the Parties faced significant risks if litigation continued. The Settlement is fair, reasonable, and adequate, and was negotiated at arm's length after significant discovery was conducted.

### I. The Lodestar Cross-Check Supports the Reasonableness of the Requested Fee

"In the First Circuit as elsewhere, '[t]he lodestar approach (reasonable hours spent times reasonable hourly rates, subject to a multiplier or discount for special circumstances, plus reasonable disbursements) can be a check or validation of the appropriateness of the percentage of funds fee, but is not required.'" *In re Lupron*, 2005 WL 2006833, at *6 (quoting in part *In re Thirteen Appeals*, 56 F.3d at 307). When, as is appropriate here, the lodestar method is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco*, 535 F. Supp. 2d at 270.

Here, Plaintiffs' counsel collectively worked a total of over 14,000 hours prosecuting this action from its inception through March 31, 2026. Relying on past experience, Plaintiffs' counsel know that they will spend substantial additional time, and incur additional expenses, related to the Final Approval Hearing and post-settlement work. Based on Plaintiffs' counsel's current rates, their collective lodestar is $12,847,477.95. Co-Lead Fee Decl., ¶¶ 55-56. Plaintiffs' counsel's request for an award of fees of one-third of the $8,200,000 Settlement Fund, and one-third of each

Valid Claim under the Crypto Pool, is fair and reasonable. SA §§ 24, 72. As set forth above, the maximum potential award of fees is $8,542,351.45 (*i.e.*, $2,733,333.33 from the Settlement Fund, plus $5,416,666.67 from the Crypto Pool, plus an award of Plaintiffs' counsels' costs). If the Court grants an award of the ***full amount*** of the requested fees, this represents a ***negative*** lodestar multiplier of 0.66 on Plaintiffs' counsel's lodestar—which obviously does not account for additional time that Plaintiffs' counsel will expend overseeing the Settlement and obtaining final approval. Co-Lead Fee Decl., ¶ 53.

Courts in the First Circuit routinely approve fees with ***positive*** lodestar multipliers. *See, e.g., In re VW & Audi Warranty Extension Litig*., 89 F. Supp. 3d 155, 171 (D. Mass. 2015) (multiplier of 2); *In re Neurontin Mktg. & Sales Pracs. Litig*., 58 F. Supp. 3d 167, 172 (D. Mass 2014) (multiplier of 3.32). "Empirical evidence of multipliers across many cases demonstrates that most multipliers are in the relatively modest 1-2 range." *See* 5 Newberg on Class Actions § 15:87 (5th ed. 2017).

Negative multipliers are even more reasonable because "there [is] 'no real danger of overcompensation' given that the requested fee represent[s] a discount to counsel's lodestar." *Herb v. Homesite Grp. Inc.*, 2024 WL 3593918, at *4 (D. Mass. July 31, 2024) (quoting *Hill*, 2015 WL 127728, at *18 (citation omitted)). *See also Hill*, 2015 WL 127728, at *18 (citing *In re FUG Telecom Holdings, Ltd. Sec. Litig.,* 2010 WL 4537550, at *26 (S.D.N.Y. Nov. 8, 2010)

("Lead Counsel's request for a percentage fee representing a significant discount from their lodestar provides additional support for the reasonableness of the fee request."); *In re Veeco Instruments Inc. Sec. Litig,* 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (counsel's "fee request amounts to a deep discount from their lodestar. Thus, the lodestar 'cross-check' unquestionably supports" the fee)). The ***negative*** multiplier shows that the amount is reasonable.

Additionally, Plaintiffs' counsel's hourly rates are clearly reasonable under prevailing standards, as their rates have been approved by courts in other complex class action cases. *See* Declarations of Plaintiffs' counsel, submitted contemporaneously herewith. Courts in this district have approved of hourly rates that are commensurate with Plaintiffs' counsel's hourly rates. *See, e.g., Insulet Corp. v. EOFlow Co.*, 2026 WL 309573, at *10 (D. Mass. Feb. 5, 2026) (approving 2025 hourly billing rates depending on title and years of experience as follows: $1,058 to $1,575 for partners, $1,157 to $1,233 for senior associates, $873 to $986 for associates, senior litigation paralegal rate of $554, and case assistant rate of $374); *DMO Norwood LLC v. Kia Am., Inc.*, 706 F. Supp. 3d 137, 140-41 (D. Mass. 2023) (approving hourly rates of $1,085 for a partner and $735 for a senior associate). As noted in Plaintiffs' counsel's declarations, other district courts have found Plaintiffs' counsel's hourly rates to be reasonable. Accordingly, the appropriateness of the requested fee is supported under the lodestar method.

Finally, Plaintiffs' counsel have set forth in their Declarations that the time was billed at usual and customary hourly billing rates, which have been approved by courts in other cases.

## IV. PLAINTIFFS' COUNSEL SHOULD BE REIMBURSED FOR REASONABLE LITIGATION COSTS AND EXPENSES

"Lawyers who recover a common fund for a class are entitled to reimbursement of litigation expenses that were reasonably and necessarily incurred in connection with the litigation." *Hill*, 2015 WL 127728, at *20 (citing *In re Fidelity*, 167 F.3d at 737. In the prosecution of this litigation from its inception through April 30, 2026, Plaintiffs' counsel have advanced litigation costs and expenses in the amount of $405,364.71.[3] *See* Co-Lead Fee Decl. ¶¶ 55-57, and the attached Plaintiffs' Counsel Declarations, which provide summaries of the costs and expenses by

[3] This includes, as discussed in the contemporaneously-filed declarations, expenses of $34,707.45 that have been incurred but not yet disbursed.

category. These costs and expenses were reasonable and necessary to litigate this case and obtain this Settlement, and they are recoverable on top of the thirty-three percent request for fees, costs, and expenses. SA § 72.

## V. THE PROPOSED SERVICE AWARDS SHOULD BE APPROVED

"Because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit." *Lauture v. A.C. Moore Arts & Crafts, Inc.*, 2017 WL 6460244, at *2 (D. Mass. June 8, 2017). The Settlement is not conditioned upon any maximum or minimum Service Award. Class Counsel request an award of $10,000 for each of the fourteen Class Representatives, for a total of $140,000. SA §§ 18, 52, 71; Co-Lead Fee Decl. ¶ 58. The Class Representatives have been instrumental in assisting Plaintiffs' counsel in their investigation and litigation of this matter. The Class Representatives provided documentation and detailed information that assisted Plaintiffs' counsel in drafting the complaints and the discovery responses in this litigation. The Class Representatives prepared for and gave depositions in this case, and they were committed to the litigation and were prepared to be a part of any trial that may have followed. *See* Co-Lead Fee Decl. ¶ 59.

Plaintiffs request that the Court, in recognition of their time and effort on behalf of the Settlement Class, approve a Service Award in the amount of $10,000 for each of the Class Representatives. The amount of the proposed Service Award has been approved in other class actions. *See, e.g.*, *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 272 (D. Mass. 2020), *aff'd in part, appeal dismissed in part sub nom. Arkansas Tchr. Ret. Sys. v. State St. Corp.*, 25 F.4th 55 (1st Cir. 2022) (approving service awards of $10,000 to six plaintiffs); *In re Celexa*, 2014 WL 4446464, at *1 (service awards of $10,000 to each of the class representatives).

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs submit that the requested attorneys' fees, costs, expenses, and service awards are fair, reasonable and appropriate, and should be awarded. Class Counsel will submit a final accounting of fees, costs and expenses associated with the completion of the cryptocurrency claims procedure, and reserve the right to seek any expenses and costs incurred after the date of the filing of this Motion relating to the Crypto Pool claims.

Dated: May 19, 2026

Respectfully submitted by:

*/s/ Patrick J. Vallely*
Edward F. Haber (BBO# 215620)
Ian McLoughlin (BBO #647203)
Patrick J. Vallely (BBO# 663866)
**SHAPIRO HABER & URMY LLP**
One Boston Place, Suite 2600
Boston, MA 02108
Tel: (617) 439-3939
Fax: (617) 439-0134
ehaber@shulaw.com
imcloughlin@shulaw.com
pvallely@shulaw.com

*Liaison Counsel*

Amy Keller*
James A. Ulwick*
**DiCELLO LEVITT LLP**
Ten North Dearborn Street, Sixth Floor
Chicago, IL 60602
Tel: (312) 214-7900
Fax: (312) 253-1443
akeller@dicellolevitt.com
julwick@dicellolevitt.com

Nathaniel L. Orenstein (BBO #664513)
Patrick T. Egan (BBO #637477)
Justin N. Saif (BBO #660679)
**BERMAN TABACCO**
One Liberty Square
Boston, MA 02109
Tel: (617) 542-8300

* *Admitted Pro Hac Vice*

Fax: (617) 542-1194
norenstein@bermantabacco.com
pegan@bermantabacco.com
jsaif@bermantabacco.com

Nicholas A. Migliaccio*
Jason Rathod*
Bryan Faubus*
**MIGLIACCIO & RATHOD LLP**
412 H Street NE, Ste. 302
Washington, DC 20002
Tel: (202) 470-3520
Fax: (202) 800-2730
nmigliaccio@classlawdc.com
jrathod@classlawdc.com
bfaubus@classlawdc.com

*Co-Lead Counsel for the Plaintiffs*

Michael R. Reese*
**REESE LLP**
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
Fax: (212) 253-4272
mreese@reesellp.com

George V. Granade*
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Tel: (310) 393-0070
Fax: (212) 253-4272
ggranade@reesellp.com

Charles D. Moore*
**REESE LLP**
100 South 5th Street, Suite 1900
Minneapolis, Minnesota 55402
Tel: (212) 643-0500
Fax: (212) 253-4272
cmoore@reesellp.com

*Co-Lead Counsel for the California Subclass*

James J. Pizzirusso*
**HAUSFELD LLP**
888 16th Street, N.W.
Suite 300
Washington, D.C. 20006
Tel.: (202) 540-7200
Fax: (202) 540-7201
jpizzirusso@hausfeld.com

Steven M. Nathan*
**HAUSFELD LLP**
33 Whitehall Street
Fourteenth Floor
New York, NY 10004
Tel.: (646) 357-1100
Fax: (212) 202-4322
snathan@hausfeld.com

Thomas A. Zimmerman, Jr.*
**ZIMMERMAN LAW OFFICES, P.C.**
7199 S. Kingery Highway, #1148
Willowbrook, Illinois 60527
Tel: (312) 440-0020
Fax: (312) 440-4180
tom@attorneyzim.com

*Chairs of the Plaintiffs' Executive Committee*

Sabita J. Soneji*
Cort T. Carlson*
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Tel: (510) 254-6808
Fax: (202) 973-0950
ssoneji@tzlegal.com
ccarlson@tzlegal.com

Robert C. Schubert*
Amber L. Schubert*
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, CA 94123
Tel: (415) 788-4220

Fax: (415) 788-0161
rschubert@sjk.law
aschubert@sjk.law

Laura Van Note*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
Fax: (510) 891-7030
lvn@colevannote.com
cab@colevannote.com

Michael Kind*
**KIND LAW**
8860 South Maryland Parkway, Suite 106
Las Vegas, NV 89123
Tel: (702) 337-2322
Fax: (702) 329-5881
Email: mk@kindlaw.com

Marc E. Dann*
Brian D. Flick*
**DANNLAW**
15000 Madison Avenue
Lakewood, OH 44107
Tel: (216) 373-0539
Fax: (216) 373-0536
notices@dannlaw.com

Francis A. Bottini, Jr.*
**BOTTINI & BOTTINI, INC.**
7817 Ivanhoe Ave., Suite 102
La Jolla, CA 92037
Tel: (858) 914-2001
Fax: (858) 914-2002
fbottini@bottinilaw.com

*Plaintiffs' Executive Committee*

***Counsel for the Plaintiffs and the Proposed Settlement Class Members***

**LOCAL RULE 7.1(a)(2) CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), counsel for Plaintiffs conferred with counsel for Defendant before filing this motion, and Defendant does not oppose this motion.

Dated: May 19, 2026

*/s/ Patrick J. Vallely*
Patrick J. Vallely (BBO# 663866)

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on May 19, 2026.

Dated: May 19, 2026

*/s/ Patrick J. Vallely*
Patrick J. Vallely (BBO# 663866)